RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0217-15T2

IN THE MATTER OF THE CIVIL
COMMITMENT OF C.C. SVP-705-14
_______________________________________

 Submitted May 2, 2017 – Decided July 18, 2017

 Before Judges Yannotti and Sapp-Peterson.

 On appeal from Superior Court of New Jersey,
 Law Division, Essex County, Docket No. SVP-
 705-14.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Nancy C. Hayes, Designated
 Counsel, on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Melissa H. Raksa,
 Assistant Attorney General, of counsel; Amy
 Beth Cohn, Deputy Attorney General, on the
 brief).

PER CURIAM

 This is an appeal from an order of civil commitment under the

Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -

27.38.
 In 1989, appellant, C.C., was convicted in Florida of two

counts of armed sexual battery, armed robbery, burglary, armed

kidnapping and committing a lewd act in the presence of a child.

These convictions arose out of C.C.'s forcible entry into the home

of the victim, whom he initially approached about purchasing a

vehicle the victim was selling. Once he forcibly entered her

home, C.C. sexually assaulted the victim in the presence of her

two-year old child and committed the robbery. The court imposed

a twenty-five year custodial sentence in a Florida State prison.

In addition, he was subject to parole supervision for life and

registration as a sex offender. Upon his release, he relocated

to New Jersey where he lived with his sister.

 In January 2011, C.C. pled guilty to second-degree sexual

assault of his seventeen-year old niece, whom he impregnated.

Prior to sentencing, C.C. was sent to the Adult Diagnostic

Treatment Center (ADTC) in Avenel for the purpose of determining

his eligibility for sentencing under the New Jersey Sex Offender

Act (SOA), N.J.S.A. 2C:47-1 to -10 (requiring diagnosis of

repetitive and compulsive sexual behavior). It was determined

that he was not eligible for sentencing under the SOA. At

sentencing, the court imposed a five-year custodial sentence,

parole supervision for life, Megan's Law registration requirements

and a Megan's Law Restraining Order.

 2 A-0217-15T2
 On November 7, 2014, prior to C.C. completing his sentence,

the State filed a petition seeking C.C.'s involuntary commitment

under the SVPA. The trial court conducted a two-day commitment

hearing. The State presented two expert witnesses, psychiatrist

Roger Harris, M.D., and psychologist Nicole Paolillo, Ph.D. C.C.

presented one expert witness, psychologist Christoper P. Lorah,

Ph.D.

 Dr. Paolillo concluded that C.C. suffers from a mental

abnormality or personality disorder that predisposes him to

sexually re-offend. She found that his personality disorder

included anti-social features, which are reflected in his criminal

background, impulsivity, poor judgment, substance abuse, and lack

of concern for others. She concluded that these traits predispose

C.C. to commit sexual offenses because they provide him with the

motivation or the lack of concern for others when he wants to meet

his needs.

 Dr. Paolillo noted that C.C.'s PCL-R1 score was 27.8. She

explained that although this score does not meet the threshold of

psychopathy, it is sufficient to demonstrate that such traits are

1
 The Hare Psychopath Checklist - Revised (PCL-R) is a diagnostic
tool utilized as a predictor of future violence.
http://www.statisticssolutions.com/hare-psychopathy-checklist-
revised-pcl-r/ (last visited June 19, 2017)

 3 A-0217-15T2
present. Further, on his Static-99R assessment2, C.C. received a

score of seven. This score placed C.C. in the high-risk category.

 The State's second expert, Dr. Harris, similarly opined that

C.C. suffers from a mental abnormality or a personality disorder,

which predisposes him to sexually re-offend. He specifically

diagnosed C.C. with antisocial personality disorder, finding that

C.C.'s behavior spoke to antisocial attitudes and a pervasive

pattern of disregard for the rights of others.

 Dr. Harris did not, however, diagnose C.C. as suffering from

a sexual pathology. He explained that although C.C. meets the

criteria for paraphilia, C.C. did not reveal what motivated him

in committing the sexual assaults. Thus, Dr. Harris expressed the

opinion that C.C.'s actions were characterized by an inability to

control his impulsivity, and "taking opportunities to sexually

gratify himself in spite of the impact it has on others[.]"

Consequently, while acknowledging that antisocial personality

disorder does not predispose a person to sexually re-offend, Dr.

Harris concluded that C.C.'s mental abnormality led him to sexually

offend.

2
 Static 99 is a ten-point actuarial assessment instrument utilized
to assess the risk of re-offense on the part of sex offenders.
Static-99/Static-99R, Static99 Clearinghouse, www.static99.org
(last visited June 13, 2017).

 4 A-0217-15T2
 Dr. Lorah, in his testimony on behalf of C.C., concluded that

although C.C. needed intervention to address his acting out

sexually, he did not believe the level of intervention required

the most restrictive setting posed by a civil commitment. Dr.

Lorah did not diagnose C.C. as suffering from a personality

disorder because C.C.'s history had "not demonstrated evidence of

conduct disorder prior to the age of [fifteen]," which he testified

is "a mandatory condition for the full diagnosis." He ultimately

concluded that C.C. was less likely to re-offend.

 Based upon the evidence presented at the hearing, the court

found C.C. to be a sexually violent predator and requires continued

involuntary commitment as a sexually violent predator. In reaching

its decision, the court credited the testimony of the State's two

experts and found the State presented clear and convincing evidence

that: (1) C.C. has been convicted of sexually violent offenses;

(2) he suffers from a mental abnormality or personality disorder;

(3) has had a long history of antisocial behavior that predisposes

him to sexual violence; and, (4) is presently highly likely to

commit further acts of sexual violence if not confined for control,

care, and treatment. The court entered an order of civil

commitment to the Special Treatment Unit. The present appeal

followed.

 5 A-0217-15T2
 On appeal, C.C. advances one argument. He contends the State

failed to prove by clear and convincing evidence that he is a

sexually violent predator and the risk that he would engage in

future acts of sexual violence "is at a sufficiently high level

to justify continued civil commitment under the current treatment

plan."

 We reject the argument advanced. We affirm the order of

commitment under the SVPA, substantially for the reasons expressed

in Judge Mulvihill's comprehensive oral opinion of May 26, 2015.

We add the following comments.

 Our scope of review of a SVPA commitment trial "is extremely

narrow." In re Civil Commitment of R.F., 217 N.J. 152, 174 (2014)

(quoting In re D.C., 146 N.J. 31, 58 (1996)). We accord "deference

to the findings of [] trial judges because they have the

'opportunity to hear and see the witnesses and to have the "feel"

of the case, which a reviewing court cannot enjoy.'" Ibid.

(quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "The judges

who hear SVPA cases are 'specialists' and 'their expertise in the

subject' is entitled to 'special deference.'" Id. at 173.

Accordingly, a trial court's determination is accorded substantial

deference and may "be modified only if the record reveals a clear

mistake." D.C., supra, 146 N.J. at 58.

 6 A-0217-15T2
 Under the SVPA, "[i]f the court finds by clear and convincing

evidence that the person needs continued involuntary commitment

as a sexually violent predator, it shall issue an order authorizing

the involuntary commitment of the person to a facility designated

for the custody, care and treatment of sexually violent predators."

N.J.S.A. 30:4-27.32(a). Three requirements must be satisfied to

classify a person as a sexually violent predator:

 (1) that the individual has been convicted of
 a sexually violent offense; (2) that he [or
 she] suffers from a mental abnormality or
 personality disorder; and (3) that as a result
 of his [or her] psychiatric abnormality or
 disorder, "it is highly likely that the
 individual will not control his or her
 sexually violent behavior and will reoffend."

 [R.F., supra, 217 N.J. at 173 (citations
 omitted) (quoting In re Commitment of W.Z.,
 173 N.J. 109, 130 (2002)); see also N.J.S.A.
 30:4-27.26 (enumerating the three
 requirements).]

 The SVPA defines a "[m]ental abnormality," as a "condition

that affects a person's emotional, cognitive or volitional

capacity in a manner that predisposes that person to commit acts

of sexual violence." Ibid. Although the SVPA does not define

"personality disorder," our Supreme Court has held that it is

sufficient if the offender has a mental condition that adversely

affects "an individual's ability to control his or her sexually

 7 A-0217-15T2
harmful conduct." See W.Z., supra, 173 N.J. at 127; see also

N.J.S.A. 30:4-27.26.

 It is undisputed that C.C. committed two sexually violent

offenses in 1988 and 2009. It was also established through the

credible testimony and findings of the State's two experts that

C.C. suffers from a mental abnormality or personality disorder and

is highly likely to sexually reoffend in the future. Although the

experts reached slightly different conclusions regarding C.C.'s

personality disorder, both experts based their conclusions on

C.C.'s criminal background, impulsivity, poor judgment, substance

abuse problems, failure to conform to social norms, and reckless

disregard for the rights of others. Further, both experts reviewed

C.C.'s records, conducted in-person interviews, and considered the

past and present condition of C.C. We discern no basis in the

record to disturb Judge Mulvihill's findings.

 Affirmed.

 8 A-0217-15T2